# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

**ERICA ELLINGTON**, **IAN DANIELS**,
and **MADISON DENNIS,** *individually, and*
*on behalf of others similarly situated,*

 Plaintiffs,

      v.                           No. _____

**RED HOOK CAJUN SEAFOOD & BAR INC.,**     **FLSA Collective Action**
*d/b/a Red Hook Cajun Seafood,*             **JURY DEMANDED**
*a Tennessee Corporation,*
**RED HOOK OF WINCHESTER INC.,**
*a Tennessee Corporation,*
**RED HOOK OF CHURCH INC.,**
*d/b/a Red Pier Cajun Seafood and Bar,*
*a Tennessee Corporation,*
**RED HOOK OF BARTLETT INC.,**
*a Tennessee Corporation,*
**RED HOOK OF JACKSON TN INC.,**
*a Tennessee Corporation,*
**RED HOOK OF MEMPHIS INC.,**
*a Tennessee Corporation,*
**RED HOOK OF WHITEHAVEN INC.,**
*a Tennessee Corporation,*
**RED HOOK OF WOLFCHASE INC.,**
*a Tennessee Corporation,*
**RED HOOK CRAB SHACK LLC,**
*a Texas Limited Liability Company,*
**RED HOOK SOUTHAVEN INC.,**
*a Mississippi Corporation,*
**RED HOOK OF CHURCH INC.,**
*d/b/a Red Hook Cajun Seafood & Bar,*
*a Mississippi Corporation,*
**RED HOOK OF CHURCH ROAD INC.,**
*a Mississippi Corporation,*
**SUN WAI JOE NG** and **RYAN NG,** *Individually,*

Defendants.

## ORIGINAL COLLECTIVE ACTION COMPLAINT

Plaintiffs Erica Ellington, Ian Daniels, and Madison Dennis, individually, and on behalf of other similarly situated current and former tipped employees (servers and bartenders), bring this collective action against Defendants Red Hook Cajun Seafood & Bar Inc., Red Hook of Winchester Inc., Red Hook of Church Inc. (Tennessee), Red Hook of Bartlett Inc., Red Hook of Jackson TN Inc., Red Hook of Memphis Inc., Red Hook of Whitehaven Inc., Red Hook of Wolfchase Inc., Red Hook Crab Shack LLC, Red Hook of Southaven Inc., Red Hook of Church Inc. (Mississippi), Red Hook of Church Road Inc.,  Sun Wai Joe Ng and Ryan Ng  (collectively "Defendants" or "Red Hook"), and alleges as follows:

## I.        INTRODUCTION.

1.  This lawsuit is brought against Defendants as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* to recover unpaid minimum wages, overtime compensation, and other damages owed to Plaintiffs and other similarly situated current and former tipped employees who are members of a class as defined herein.

## II.        JURISDICTION AND VENUE.

2.  The FLSA authorizes private actions to recover damages for violations of the FLSA's wage and hour provisions. Jurisdiction over Plaintiff's FLSA claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

3.  Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiffs were employed by Defendants in this district at all times relevant to this action, Defendants regularly has conducted business in this district, and have engaged and continue to engage in wrongful conduct alleged herein in this district, during all material times in this cause.

## III.    CLASS DESCRIPTION.

4.  Plaintiffs bring this action on behalf of the following similarly situated persons:

> All current and former servers and/or bartenders of Defendants during the three (3) year period preceding the filing of this Complaint, up to and including the date of final judgment in this matter, and who are the Named Plaintiff(s) or elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b). (Collectively, "the class")[1]

## IV.    PARTIES.

5.  Defendant Red Hook Cajun Seafood & Bar Inc. is a Tennessee for-profit corporation with its principal office located at 6105 Stage Rd, Bartlett, Tennessee 38134-8313. Defendant Red Hook Cajun Seafood & Bar Inc. has been an "employer" of Plaintiffs and similarly situated workers for purposes of the FLSA, 29 U.S.C. §203(d), during the relevant period to this action. According to the Tennessee Secretary of State, Red Hook Cajun Seafood & Bar Inc.'s active assumed name is Red Hook Cajun Seafood and may be served through its registered agent for service of process and owner: Joe Wai Sun Ng, 6105 Stage Road, Bartlett, Tennessee 38134-8313.

6.  Defendant Red Hook of Winchester Inc. is a Tennessee for-profit corporation, that has been dissolved, and its principal office was located at 7733 Winchester Road, Memphis, Tennessee 38125-2304. Defendant Red Hook of Winchester Inc. has been an "employer" of Plaintiffs and similarly situated workers for purposes of the FLSA, 29 U.S.C. §203(d), during the relevant period to this action. According to the Tennessee Secretary of State, Red Hook of Winchester Inc. may be served through its registered agent for service of process: Chun Yin Wong, 7733 Winchester Road, Memphis, Tennessee 38125.

---

[1] Plaintiff reserves the right to modify or amend the Class Description upon newly discovered information gathered through the discovery process.

7.  Defendant Red Hook of Church Inc. is a Tennessee for-profit corporation with its principal address being 5901 Poplar Avenue, Memphis, Tennessee 38119-3938. Defendant Red Hook of Church Inc. has been an "employer" of Plaintiffs and similarly situated workers for purposes of the FLSA, 29 U.S.C. §203(d), during the relevant period to this action. According to the Tennessee Secretary of State, Red Hook of Church Inc.'s active assumed name is Red Pier Cajun Seafood and Bar, and may be served through its registered agent for service of process: Al Fang Zheng, 5901 Poplar Avenue, Memphis, Tennessee 38119-3938.

8.  Defendant Red Hook of Bartlett Inc. is a Tennessee for-profit corporation with its principal office located at 6105 Stage Road, Bartlett, Tennessee 38134-8313. Defendant Red Hook of Bartlett Inc. has been an "employer" of Plaintiffs and similarly situated workers for purposes of the FLSA, 29 U.S.C. §203(d), during the relevant period to this action. According to the Tennessee Secretary of State, Red Hook of Bartlett Inc., may be served through its registered agent for service of process: Red Hook of Bartlett Inc. or owner Joe Wai Sun Ng, 6105 Stage Road, Bartlett, Tennessee 38134-8313.

9.  Defendant Red Hook of Jackson TN Inc. is a Tennessee for-profit corporation with its principal place of business located at 363 N Parkway, Jackson, Tennessee 38305-2872. Defendant Red Hook of Jackson TN Inc. has been an "employer" of Plaintiffs and similarly situated workers for purposes of the FLSA, 29 U.S.C. §203(d), during the relevant period to this action. According to the Tennessee Secretary of State, Red Hook of Jackson TN Inc., may be served through its registered agent for service of process: Red Hook of Jackson TN Inc. 363 N Parkway, Jackson, Tennessee 38305-2872, or owner Joe Wai Sun Ng, 6105 Stage Road, Bartlett, Tennessee 38134-8313.

10. Defendant Red Hook of Memphis Inc. is a Tennessee for-profit corporation with its principal place of business located at 3295 Poplar Avenue, Suite 101, Memphis, Tennessee 38111-4690. Defendant Red Hook of Memphis Inc. has been an "employer" of Plaintiffs and similarly situated workers for purposes of the FLSA, 29 U.S.C. §203(d), during the relevant period to this action. According to the Tennessee Secretary of State, Red Hook of Memphis Inc., may be served through its registered agent for service of process: He Xin Chen, 3295 Poplar Avenue, Memphis, Tennessee 38111-4690.

11. Defendant Red Hook of Whitehaven Inc. is a Tennessee for-profit corporation with its principal place of business located at 4255 Elvis Presley Boulevard, Memphis, Tennessee 38116-6436. Defendant Red Hook of Whitehaven Inc. has been an "employer" of Plaintiffs and similarly situated workers for purposes of the FLSA, 29 U.S.C. §203(d), during the relevant period to this action. According to the Tennessee Secretary of State, Red Hook of Whitehaven Inc., may be served through its registered agent for service of process: Hui Zheng, 4255 Elvis Presley Boulevard, Memphis, Tennessee 38116-6436.

12. Defendant Red Hook of Wolfchase Inc. is a Tennessee for-profit corporation with its principal place of business located at 2844 New Brunswick Road, Bartlett, Tennessee 38133-4142-6436. Defendant Red Hook of Wolfchase Inc. has been an "employer" of Plaintiffs and similarly situated workers for purposes of the FLSA, 29 U.S.C. §203(d), during the relevant period to this action. According to the Tennessee Secretary of State, Red Hook of Wolfchase Inc., may be served through its registered agent for service of process and owner: Sun Wai Joe Ng, 2844 New Brunswick Road, Bartlett, Tennessee 38133-4142-6436.

13. Defendant Red Hook Crab Shack LLC is a Texas for-profit limited liability company with its principal place of business located at 6759 NW Loop 410, San Antonio, Texas 78238-4504. Defendant Red Hook Crab Shack LLC has been an "employer" of Plaintiffs and similarly situated workers for purposes of the FLSA, 29 U.S.C. §203(d), during the relevant period to this action. According to the Texas Secretary of State, Red Hook Crab Shack LLC may be served through its registered agent for service of process: Youqin Lin, 6759 NW Loop 410, San Antonio, Texas 78238-4504.

14. Defendant Red Hook of Southaven Inc. is a Mississippi for-profit corporation with its principal address being 7065 Airways Boulevard, Suite 101, Southaven, Mississippi 38671. Defendant Red Hook of Southaven Inc. has been an "employer" of Plaintiffs and similarly situated workers for purposes of the FLSA, 29 U.S.C. §203(d), during the relevant period to this action. According to the Mississippi Secretary of State, Red Hook of Southaven Inc. may be served through its registered agent for service of process: Quan Qing Zheng, 7065 Airways Boulevard, Suite 101, Southaven, Mississippi 38671.

15. Defendant Red Hook of Church Inc. is a Mississippi for-profit corporation with its principal address being 4975 Pepper Chase Drive, Southaven, Mississippi 38671. Defendant Red Hook of Church Inc. has been an "employer" of Plaintiffs and similarly situated workers for purposes of the FLSA, 29 U.S.C. §203(d), during the relevant period to this action. According to the Mississippi Secretary of State, Red Hook of Church Inc. does business as Red Hook Cajun Seafood & Bar and may be served through its registered agent for service of process: Zi Fang Zheng, 4975 Pepper Chase Drive, Southaven, Mississippi 38671.

16. Defendant Red Hook of Church Road Inc. is a dissolved Mississippi for-profit corporation. Defendant Red Hook of Church Road Inc. has been an "employer" of Plaintiffs and similarly situated workers for purposes of the FLSA, 29 U.S.C. §203(d), during the relevant period to this action. According to the Mississippi Secretary of State, Red Hook of Church Road Inc. may be served through its registered agent for service of process: Lorena Leong, 4975 Pepper Chase Drive, Southaven, Mississippi 38671.

17. Upon information and belief, individual Defendants Sun Wai Joe Ng and Ryan Ng are the owners and operators of the Red Hook Cajun Seafood family of restaurants and have been responsible for the implementation and administration of the pay practices and exercised operational control of the Red Hook Cajun Seafood family of restaurants during all times material to this lawsuit.

18. Plaintiff Ellington was employed by Defendants as an hourly-paid tipped employee during the relevant period herein. Her Consent to Join this collective action is attached hereto as *Exhibit A.*

19. Plaintiff Daniels was employed by Defendants as an hourly-paid tipped employee during the relevant period herein. His Consent to Join this collective action is attached hereto as *Exhibit A.*

20. Plaintiff Dennis employed by Defendants as an hourly-paid tipped employee during the relevant period herein. Her Consent to Join this collective action is attached hereto as *Exhibit A.*

## V.      SUMMARY OF ACTION.

21. Defendants pays its tipped employees below the minimum wage rate by taking an unlawful advantage of the tip-credit provisions of the FLSA. Under the tip-credit provision, an

employer of tipped employees may, under certain circumstances, pay those employees less than the minimum wage rate by taking a "tip credit" against the employer's minimum wage obligations from the tips received from customers.

22. However, there are strict requirements for an employer to utilize the "tip credit." *See* 29 U.S.C. 203(m). An employer must advise an employee in advance of its use of the tip credit pursuant to the provisions of section 3(m) of the FLSA. *See id.* (Stating the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection."). That is, the employer must inform the employee: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

23. Further, it is illegal for employers to require tipped employees to give up a portion of their tips to their employer or to ineligible employees, such as management staff. *See Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (for "the work shifts in which salad mixers were included within the tip pool, the pooling scheme was illegal..."); *Portales v. MBA Inv. Co., LLC*, No. 3:13CV00001, 2014 WL 5795206, at *3 (N.D. Ohio Oct. 16, 2014) ("When an employer includes a non-customarily tipped employee or another employer in a mandatory tip pool, the pool is invalid under FLSA." (citing 29 U.S.C. § 203)); *Bernal v. Vankar Enter., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take the FLSA tip credit when it required waiters to pay for shortages and unpaid tabs).

24. Additionally, an employer must pay the minimum statutory hourly rate ($2.13 per hour under the FLSA).  See 29 U.S.C. 203(m).

25. Moreover, an employer cannot pay below the minimum wage to tipped employees and require those tipped employees to perform non-tipped work that is unrelated to the tipped occupation.  *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (explaining that when tipped employees perform "non-tipped duties" that "are unrelated to their tipped duties…such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work."); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1285 (10th Cir. 2017); *Osman v. Grube, Inc.*, No. 16-CV-802, 2017 WL 2908864, at *4 (N.D. Ohio July 7, 2017) (employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation); *Roussell v. Brinker Intern., Inc.*, No. 05 Civ. 3733, 2008 WL 2714079, at *12 (S.D. Tex. July 9, 2008) ("An employer may take a tip credit for an employee that works 'dual jobs,' but only for the time the employee spends working in his "tipped employee" capacity.") (quoting 29 C.F.R. 531.56(e)).

26. Finally, an employer cannot require its tipped employees to perform non-tipped work that is related to the employees' tipped occupation but exceeds twenty (20) percent of the employees' time worked during a workweek. *See Marsh v. J. Alexander's, LLC*, 905 F.3d 610, 626-28 (9th Cir. 2018) (adopting 20% standard for dual jobs regulation and finding the DOL's opinion on dual jobs for tipped workers to be entitled to deference); *Fast v. Applebee's Intern., Inc.*, 638 F.3d 872, 881 (8th Cir. 2011) (granting the DOL's 20% standard deference); *Driver v. AppleIllinois, LLC*, No. 06 Civ. 6149, 2012 WL 3716482,

at *2 (N.D. Ill. Aug. 27, 2012) ("An employer may take a tip credit only for hours worked by [an] employee in an occupation in which [he] qualifies as a tipped employee."); *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (the court indirectly cast its imprimatur on the DOL's aforementioned dual-jobs regulation and Field Operations Handbook, citing both the "related to" standard in 29 C.F.R. § 531.56(e) and the 20% standard in § 30d00(e)); *Flood v. Carlson Restaurants, Inc.*, No. 13 Civ. 6458 (AT), 2015 WL 1396257 (S.D.N.Y. Mar. 27, 2015) (denying defendant's motion to dismiss explaining that the 20% standard is a reasonable interpretation of the FLSA and ultimately granting 216(b) notice); *Ide v. Neighborhood Restaurant Partners, LLC*, No. 13 Civ. 509 (MHC), 2015 WL 11899143, at *6 (N.D. Ga., 2015) (". . . a reasonable interpretation of § 531.56(e) is that [plaintiff] would be entitled to minimum wage if she spends more than twenty percent of her time performing related but non-tipped duties."); *Crate v. Q's Restaurant Group LLC*, 2014 WL 10556347, at *4 (M.D. Fla., 2014) ("[T]he Court concludes that the 20% rule clarifies the ambiguity contained in 29 C.F.R. § 531.56(e) by delineating how much time a tipped employee can engage in related, non-tip-producing activity before such time must be compensated directly by the employer at the full minimum wage rate.").

27. Defendants violated the FLSA in the following respects:

    a. <u>Violation for failure to inform</u>:  Defendants failed to correctly inform Plaintiffs and putative class members of the desire to rely on the tip credit to meet its minimum wage obligations.  In fact, Defendants failed to inform Plaintiffs of the following: (1) the amount of the cash wage that is to be paid to the tipped employee; (2) the amount by which the wages of the tipped employee are increased on account of the tip credit; (3) that all tips received by the employee must be retained by the

employee except for tips contributed to a valid tip pool; and (4) that the tip credit shall not apply to any employee who does not receive the notice.

b. <u>Violation for performing work unrelated to tipped occupation:</u> Plaintiffs and the putative class were required to perform improper types, and excessive amounts, of non-tipped work, including, but not limited to, cleaning the parking lot and other areas outside of the restaurant, cleaning the back counter, washing and cleaning dishes, cleaning ledges, cleaning the kitchen, cleaning walls, cleaning refrigerators, microwaves and other appliances, cleaning window blinds and windows, dusting, cleaning bathrooms, and washing utensils (crab crackers, etc.), silverware, and cleaning bath rooms.

c. <u>Violation for performing non-tipped side work in excess of 20% of the time spent working in the week:</u> Plaintiffs were required to perform greater than 20% of their time in performing non-tip producing side work, including, but not limited to, cleaning and stocking the serving line, cutting fruit, refilling napkin dispensers, preparing and breaking down the tea station, attending to the soft drink station and dispenser, cleaning booths, cleaning chairs, cleaning menus, cleaning soft drink dispensers and nozzles, cleaning tables, filling and cleaning ketchup and other sauces and condiments, filling and cleaning salt and pepper shakers, stocking ice, sweeping floors, rolling silverware (including a bib and wet napkin), and taking out trash.

d. <u>Violation for an invalid tip-pool:</u> Plaintiffs and the putative class were required to submit a portion of their tips to an invalid tip pool arrangement as Defendants'

managers retained a portion of their employees' tips pursuant to this unlawful tip-pool scheme.

e. <u>Violation for failure to supplement wages</u>: Plaintiffs and the putative class were required to work for less than the minimum wage on many occasions where the employee's tips averaged less than $5.12 (or the applicable tip-credit rate) an hour Defendants failed to supplement their wages to equal the minimum wage. *See Osman v. Grube, Inc.*, No. 16-cv-802, 2017 U.S. Dist. LEXIS 105276, at *6 (N.D. Ohio July 7, 2017) (citation omitted)

28. As a result of these violations, Defendants lost the ability to use the tip credit and therefore must compensate Plaintiffs and all similarly situated workers at the full minimum wage rate, unencumbered by the tip credit, and for all hours worked.  In other words, Defendants must account for the difference between the wages paid to Plaintiffs and all similarly situated workers and the minimum wage rate.

## VI.    FACTS

29. Upon information and belief, Defendants own and operate approximately ten (10) Red Hook Cajun Seafood & Bar restaurants in the states of Tennessee, Mississippi, and Texas.

30. These restaurants are full-service restaurants that employ servers and bartenders to serve food and beverage items to customers.

31. However, Defendants paid their tipped workers less than the minimum wage under the law.

32. Defendants attempted to utilize the tip credit to meet its minimum wage obligation to its tipped workers, including the Plaintiff and the putative class.

33. Plaintiff Ellington worked for Defendants at their Winchester location in Memphis.  She worked as a bartender and was paid less than the federal minimum wage during the last

three (3) years. More specifically, Plaintiff worked for Defendants as a bartender during the summer of 2021.

34. Plaintiff Daniels worked for Defendants at Defendants' Winchester and Wolfchase locations during the statutory period.  Plaintiff Daniels worked as a server and was paid less than the federal minimum wage during the last three (3) years.  Plaintiff Daniels worked in excess of forty (40) hours per week for Defendant's while employed as a server.

35. Plaintiff Dennis worked for Defendants at their Red Pier location at Poplar/Ridgeway in Memphis and at their Winchester location.  Plaintiff Dennis worked as a server and was paid less than the federal minimum wage during the last three (3) years. Plaintiff Dennis worked for Defendants during the statutory period.

36. The tip credit has a harmful effect on workers that threatens the health of the economy. Adasina Social Capital, a company representing investors with more than $538 billion in assets, has issued a letter large corporations operating restaurants advising of the ills of using the tip credit. (See https://adasina.com/investor-statement-in-support-of-ending-the-subminimum-wage/, last visited January 11, 2021).  The letter states as follows:

> Tipped workers are the largest group paid a subminimum wage and represent approximately six million people in the United States. The restaurant industry by far employs the largest number of tipped workers, representing 13.6 million people.
>
> **Frozen at $2.13 per hour, a tipped subminimum wage worker can be paid as little as $4,430 per year for full-time work.** As a result, in the 42 states that allow payment of a subminimum wage, tipped workers are more than twice as likely to live in poverty, and the rates are even higher for women and people of color. The subminimum wage for tipped workers has risen little since it was enacted following

the emancipation of slavery, a time when employer trade associations pushed to

recoup the costs of free, exploited labor.

(*Id.*) (emphasis in original)

37. Given the harmful effects of the tip credit, there are strict requirements that must be met

by an employer who seeks to utilize the trip credit to meet its minimum wage obligations.

38. In this case, Defendants did not satisfy the strict requirements to use the tip credit.

Defendants maintained a practice and de facto policy whereby they failed to provide the

Plaintiffs and the putative class with the statutorily required notice regarding (1) the amount

of the cash wage that is to be paid to the tipped employee, (2) the amount by which the

wages of the tipped employee are increased on account of the tip credit, (3) that all tips

received by the employee must be retained by the employee except for tips contributed to

a valid tip pool, and (4) that the tip credit shall not apply to any employee who does not

receive the notice.

39. Defendants also maintained a de facto policy and practice whereby tipped employees were

required to perform non-tip producing side work unrelated to the employees' tipped

occupation. As a result, Plaintiffs and the putative class were engaged in dual occupations

while being compensated at the tip credit rate.  While performing these non-tip generating

duties, they did not interact with customers and could not earn tips.

40. These duties include but are not limited to the following: cleaning the parking lot and other

areas outside of the restaurant, cleaning the back counter, washing and cleaning dishes,

cleaning ledges, cleaning the kitchen, cleaning walls, cleaning refrigerators, microwaves

and other appliances, cleaning window blinds and windows, dusting, cleaning bathrooms,

and washing utensils (crab crackers, etc.) and silverware, cleaning and stocking the serving

line, cleaning booths, cleaning chairs, cleaning menus, cleaning soft drink dispensers and
nozzles, cleaning tables, filling and cleaning sauce bottles, filling and cleaning salt and
pepper shakers, stocking ice, sweeping floors, rolling silverware, and taking out trash,
amongst other activities, like cleaning bathrooms, that were not related to tipped duties

41. Defendants also maintained a de facto policy and practice whereby tipped employees were
required to spend a substantial amount of time, in excess of 20 percent, performing non-tip
producing side work related to the employees' tipped occupation.

42. Specifically, Defendants maintained a de facto policy and practice whereby tipped
employees, were required to spend a substantial amount of time performing non-tip
producing side work, including, but not limited to cleaning tables, refilling condiments,
dusting walls and fans, and setting up tables.

43. Further, Defendants required Plaintiffs and the putative class to perform non-tipped
producing work prior to the opening of the restaurant and after the restaurant closed.
Indeed, Defendants required the Plaintiff and the to arrive prior to the restaurants opening
for business when there were no customers and no opportunity to earn tips, to perform
manual labor cleaning and setup duties. Likewise, Defendants required the Plaintiffs and
Collective Members to remain at the restaurant after it had closed for business and there
was no opportunity to earn tips, to perform manual labor cleaning duties. At times, they
spent 30 minutes to two hours performing work before the restaurant was open and the
same amount of time after the restaurant was closed performing non-tipped producing
work.

44. However, Defendants did not pay its tipped employees the full minimum wage rate for this
work. The duties that Defendant required Plaintiffs and the putative class to perform were

duties that are customarily assigned to "back-of-the-house" employees in other establishments, who typically receive at least the full minimum wage rate.

45. Defendants did not have an actual policy prohibiting tipped employees from performing certain types, or excessive amounts, of non-tipped work.

46. Defendants did not track or record the amount of time the tipped employees spent performing non-tipped work, even though Defendants were capable of doing so.

47. Plaintiffs and the putative class were also required to submit a portion of their tips to an invalid tip pool arrangement as Defendants retained a portion of their employees' tips pursuant to this tip-pool scheme.

48. For example, there have been shifts where Plaintiff Ellington earned zero (0) dollars in tips, yet was required to pay "out of her pocket" towards a tip-pool. The money that she paid into that tip-pool did not go towards employees customarily and regularly receive tips. The other Named Plaintiffs had similar experiences. In other words, Plaintiffs had to pay Red Hook to work, and so did putative class members.

49. Likewise, Defendants failed to supplement Plaintiffs' and putative class members pay when their tips/pay dropped below minimum wage in situations like, for example, what was described in paragraph 33.

50. Because Defendants violated the requirements to claim the tip credit, Defendants lost the right to take a credit toward their minimum wage obligation to Plaintiffs and the putative class.

51. As such, Plaintiffs and the putative class were not compensated at the federally mandated minimum wage.

52. Defendants knew or should have known that their policies and practices violate the law, and Defendants have not made a good faith effort to comply with the FLSA. Rather, Defendants acted knowingly, willfully, and/or with reckless disregard of the law carried and continues to carry out an illegal pattern and practice regarding its tipped employees. Defendants' method of paying Plaintiffs and the putative class was not based on a good faith and reasonable belief that its conduct complied with the law.

## VII.    COLLECTIVE ACTION ALLEGATIONS

53. Plaintiffs brings this action on behalf of herself and the class as a collective action pursuant to the FLSA, 29 U.S.C. §§ 206, 207, and 216(b).

54. The claims under the FLSA may be pursued by those who opt-in to this case under 29 U.S.C. § 216(b).

55. The members of the class are so numerous that joinder of all other members of the class is impracticable. While the exact number of the other members of the class is unknown to Plaintiff at this time and, can only be ascertained through applicable discovery, Plaintiffs believes there are potentially hundreds of individuals in the class.

56. The claims of Plaintiffs are typical of the claims of the class. Plaintiffs and other servers and bartenders who work or have worked for Defendants were subjected to the same operational, compensation and timekeeping policies and practices.

57. As a result, the unpaid wage claims of Plaintiffs and members of the class, as previously described, are unified by common theories of Defendants' FLSA statutory violations.

58. Common questions of law and fact exist as to the class which predominate over any questions only affecting other members of the class individually and include, but are not limited to, the following:

- Whether Plaintiffs and other members of the class were expected and/or required to perform work without proper compensation;

- Whether Defendants suffered and permitted Plaintiffs and other members of the class to perform work without proper compensation;

- Whether Defendants failed to pay Plaintiffs and the other members of the class the applicable FLSA minimum wage/any applicable overtime compensation for all work performed;

- The correct statutes of limitations for the claims of Plaintiffs and other members of the class;

- Whether Plaintiffs and other members of the class are entitled to damages from Defendants, including but not limited to liquidated damages, and the measure of the damages; and,

- Whether Defendants are liable for interest, attorneys' interest, fees, and costs to Plaintiffs.

59. Plaintiffs will fairly and adequately protect the interests of the class as their interests are aligned with those of the other members of the class. Plaintiffs have no interests adverse to the class and they have retained competent counsel who are experienced in collective action litigation.

60. The collective action mechanism is superior to the other available methods for a fair and efficient adjudication of the controversy. The expenses, costs, and burden of litigation suffered by individual other members of the class in a collective action are relatively small in comparison to the expenses, costs, and burden of litigation of individual actions, making it virtually impossible for other members of the class to individually seek address for the wrongs done to them.

61. Plaintiffs and other members of the class have suffered and will continue to suffer irreparable damage from the unlawful policies, practices, and procedures implemented by Defendants.

## COUNT I
## FLSA VIOLATIONS – MINIMUM WAGE
### (On Behalf of the Class)

62. Plaintiffs, on behalf of themselves and others similarly situated, repeat and re-allege each preceding paragraph above as if they were fully set forth herein.

63. At all times relevant herein, Defendants have been and continue to be an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 206(a) and 207(a).

64. Pursuant to Defendants' aforementioned centralized, uniform and common plans, policies and practices, it has failed to pay Plaintiffs and other members of the class the applicable minimum wage rates as required by the FLSA.

65. At all times relevant and based on the aforementioned allegations, Defendants had a centralized, uniform and common plan, de facto policy, and practice of willfully refusing to pay Plaintiffs and other members of the class all minimum wages they were due.

66. At all times relevant herein, Defendants' aforementioned centralized, uniform and common plans, policies and practices of willfully failing to pay Plaintiffs and members of the class at least the required minimum wage rate of $7.25 an hour constitutes a variety of unpaid wage claims that are unified by common theories of Defendants' FLSA violations.

67. At all times relevant, Defendants had actual and/or constructive knowledge of willfully refusing to pay Plaintiffs and other members of the class for all the aforementioned compensable time of at least the applicable FLSA minimum wage rate of pay.

68. Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

69. Due to Defendants' aforementioned willful FLSA violations and, lack of a good faith basis in committing such violations, Plaintiffs and the other members of the class are entitled to

recover from Defendants compensation for unpaid minimum wages, an additional equal amount as liquidated damages, as well as interest, reasonable attorneys' fees, costs, and disbursements relating to this action for the three-year statutory period under the FLSA, 29 U.S.C. § 216(b).

## COUNT II
## <u>FLSA VIOLATIONS – OVERTIME COMPENSATION</u>
### (On Behalf of the Class)

70. Plaintiffs, on behalf of themselves and other members of the class, repeat and re-allege each preceding paragraph above as if they were fully set forth herein.

71. At all times relevant herein, Defendants have been and continue to be an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 206(a) and 207(a).

72. Pursuant to Defendants' aforementioned centralized, uniform and common plans, de facto policies, and practices, it has failed to pay Plaintiff and other members of the class the applicable overtime compensation as required by the FLSA.

73. At all times relevant and based on the aforementioned allegations, Defendants had a centralized, uniform and common plan, policy and practice of willfully refusing to pay Plaintiffs and other members of the class at one and on-half time their regular rate for all hours worked in excess of forty (40) per work week.

74. At all times relevant herein, Defendants' aforementioned centralized, uniform and common plans, policies and practices of willfully failing to pay Plaintiffs and members of the class at least one and one-half times their regular rate for all hours worked in excess of forty (40) per work week constitutes a variety of unpaid wage claims that are unified by common theories of Defendants' FLSA violations.

75. At all times relevant, Defendants had actual and/or constructive knowledge of willfully refusing to pay Plaintiffs and other members of the class for all the aforementioned compensable time of at least the applicable FLSA overtime rate of pay.

76. Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

77. Due to Defendants' aforementioned willful FLSA violations and, lack of a good faith basis in committing such violations, Plaintiffs and the other members of the class are entitled to recover from Defendants compensation for unpaid overtime wages, an additional equal amount as liquidated damages, as well as interest, reasonable attorneys' fees, costs, and disbursements relating to this action for the three-year statutory period under the FLSA, 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

Whereas, Plaintiffs individually, and/or on behalf of all other similarly situated members of the class, request this Court to grant the following relief against Defendants:

A.  Designation of this cause as a collective action on behalf of the class and promptly issue notice pursuant apprising class members of the pendency of this action and permitting other members of the class to assert timely FLSA claims in this action by filing individual Consents under 29 U.S.C. § 216(b);

B.  On Count I, an award of compensation for unpaid minimum wages to Plaintiffs and the other members of the class at the applicable FLSA minimum wage rate of pay;

C.  On Count II, an award of compensation for unpaid overtime wages to Plaintiffs and the other members of the class at the applicable FLSA overtime rate of pay;

D.      On Counts I and II an award of liquidated damages to Plaintiffs and other members of

        the class;

E.      On Counts I and II an award of prejudgment (to the extent liquidated damages are not

        awarded) interest and post-judgment interest at the applicable legal rate to Plaintiffs and

        other members of the class;

F.      On Counts I and II an award of costs, expenses, and disbursements relating to this action

        together with reasonable attorneys' fees and expert fees to Plaintiffs and other members

        of the class;

G.      On Counts I and II a ruling that the three-year statutory period for willful violations under

        the FLSA shall apply in this action, and

H.      Such other general and specific relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a **trial by jury** on all issues so triable.

Dated:  December 3, 2021

Respectfully Submitted,

*/s/ J. Russ Bryant*
J. Russ Bryant (TN BPR #33830)
Robert E. Turner, IV (TN BPR #35364)
Robert E. Morelli, III (TN BPR #037004)
**JACKSON SHIELDS YEISER HOLT
OWEN & BRYANT**
Attorneys at Law
262 German Oak Drive
Memphis, Tennessee 38018
Tel: (901) 754-8001
Fax: (901) 759-1745
*rbryant@jsyc.com*
*rturner@jsyc.com*
*rmorelli@jsyc.com*

Attorneys for Plaintiffs